**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF GEORGIA**

**SAVANNAH DIVISION**

GEORGIA COALITION FOR THE PEOPLES'
AGENDA, INC., as an organization;
GEORGIA STATE CONFERENCE OF THE
NAACP, as an organization; and THIRD
SECTOR DEVELOPMENT, INC., as an
organization;

        Plaintiffs,

v.

JOHN NATHAN DEAL, in his official capacity
as Governor of Georgia, and BRIAN P. KEMP,
in his official capacity as Secretary of State for
the State of Georgia,

        Defendants.

Civil Action

Case No. _____

**PLAINTIFFS' MEMORANDUM OF
LAW IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION FOR A
PRELIMINARY INJUNCTION**

**National Voter Registration Act of
1993, First and Fourteenth
Amendments to the United States
Constitution**

## I.      INTRODUCTION

Plaintiffs seek emergency relief from this Court to remedy a serious, and otherwise

irreparable, injury: the loss of the right to vote.  The facts are undisputed.  Hurricane Matthew

caused the government to close its offices in Chatham County for several days coinciding

precisely with the last days in which citizens had the opportunity to register to vote.  After the

offices reopened, the State refused to extend the deadline for voter registration in Chatham

County.  Without an injunction, ordering defendants to allow citizens to register to vote for a period commensurate with the days lost to the storm, innumerable citizens in a county that has a disproportionately large minority population will lose the right to vote in November.

The relief requested is not unprecedented.  Indeed, just this week, a district court judge in Florida granted precisely this relief, under circumstances not as severe as in this case.  Order Granting Temporary Restraining Order, ECF No. 15, *Fla. Dem. Party v. Scott*, No. 4:16-cv-626-MW/CAS 9N.D. Fla. Oct. 10, 2016), and Order Granting Preliminary Injunction, *id.*, ECF 29 (Oct. 12, 2016) (Exhs. A and B hereto).  There, applying the precise standards for injunctive relief applicable here, the district court extended the time for registration from October 12 through October 18.  In *Fla. Dem. Party*, at least citizens had an opportunity to register one final day after the storm cleared, because offices were open on October 11.  The citizens of Chatham County did not even have that one additional day.

The constitutionally guaranteed right to vote cannot be abridged without adequate justification, and there is no legitimate State interest that outweighs the burden on plaintiffs' rights occasioned by the refusal of defendants to allow additional time for registration.  Furthermore, as will be demonstrated below, the failure to reopen registration violates the National Voter Registration Act, which mandates a maximum of 30 days before Election Day for the close of voter registration by the states.

For the reasons set forth below, Plaintiffs respectfully ask this Court to order the reopening of voter registration in Chatham County for a period of time commensurate to that lost due to the storm and defendants' refusal to reopen registration.

## II.   NATURE OF THE CASE

This lawsuit seeks to prevent the disenfranchisement of eligible prospective voters in

Chatham County, whose right to vote has been impeded by Hurricane Matthew, the resulting damage and closure of government offices, and the refusal of Defendants to provide relief to affected prospective voters.

Under Georgia law, the voter registration deadline for Georgia voters was Tuesday, October 11, 2016.  Eligible citizens who failed to register by October 11 cannot cast a ballot that will count in the upcoming November 8, 2016 general election.

Chatham County government offices, including the Chatham County Board of Elections, opened today.  They were last open on Wednesday, October 5.  Many prospective voters thus lost the ability to register for the last six days of the voter registration period.  For much of the interim period, the county was under a state of emergency and an evacuation order due to Hurricane Matthew.  Matthew hit Chatham County as a Category 2 hurricane on Friday, October 7, and caused massive damage, substantial flooding, and a loss of power to more than a hundred thousand county residents.  Despite declaring a state of emergency and issuing a mandatory evacuation order, Defendants have refused to extend the voter registration deadline for the citizens heeding Governor Deal's orders to evacuate in Chatham County and elsewhere in Georgia.

South Carolina, which was also impacted by Hurricane Matthew, provided citizens with an extended registration period.  Florida was also ordered by the U.S. District Court for the Northern District of Florida to extend its voter registration deadline to October 18, 2016, as a result of the impact of Hurricane Matthew on Florida residents.  Meanwhile, elected officials, citizens, and organizations, including Plaintiffs, have called upon Defendants to extend Georgia's voter registration deadline so that voters in Chatham County and elsewhere do not

lose the ability to exercise their fundamental right to vote.  Defendants have heretofore refused

to take any action to protect citizens' voting rights and extend the deadline, which has now

passed.

Without relief, many eligible prospective voters who were forced to choose between

their safety and the fundamental right to vote and suffered hardships as a result of Hurricane

Matthew will be disenfranchised in the November 8, 2016 election.

### III.    STATEMENT OF FACTS

The voter registration deadline in Georgia was Tuesday, October 11.  *See* GA. CODE ANN.

§ 21-2-224(a).  Georgia residents are barred from voting a ballot that will be counted if they do

not meet the registration deadline because Georgia does not permit eligible citizens to register

during the in-person early voting period or on Election Day.  Due to Hurricane Matthew and its

aftermath, however, the Chatham County Board of Elections office was closed for the last six

days, and the last four weekdays, of the voter registration period prior to the November 2016

election.

Georgia state law requires that the main elections office in each county "remain open for

business during regular office hours on each business day, except Saturday" and  "be open at

such designated times other than the normal business hours as shall reasonably be necessary to

facilitate registration and at such other hours as will suit the convenience of the public."  GA.

CODE ANN. § 21-2-215(c).  Furthermore, "[a]ny person desiring to register as an elector shall

apply to do so by making application to a registrar or deputy registrar of such person's county of

residence in person, by submission of the federal post card application form as authorized under

Code Section 21-2-219, by making application through the Department of Driver Services as

provided in Code Section 21-2-221, by making application through the Department of Natural

Resources as provided in Code Section 21-2-221.1, by making application through designated offices as provided in Code Section 21-2-222, or by making application by mail as provided in Code Section 21-2-223."  GA. CODE ANN. § 21-2-220(a).  Applicants with access to a computer and a current Georgia driver's license or state identification card may register to vote online. GA. CODE ANN. § 21-2-221.2.

A significant number of Georgia residents, including those in Chatham County, register to vote in the days leading up to the registration deadline.  For example, a voter registration event held between 9 am and 3 pm on Tuesday, September 27, 2016, at the Chatham County Voter Registration office in Savannah drew more than 100 people.  Kelly Quimby, *State, local officials make final push to register voters*, SAVANNAH MORNING NEWS, Sept. 27, 2016, *available at* http://savannahnow.com/politics-news/2016-09-27/state-local-officials-make-final-push-register-voters.  Additionally, voter registration groups were planning on conducting voter registration and other outreach efforts in Chatham County during the last week of the voter registration period.

Governor Deal declared a state of emergency for thirteen counties, including Chatham County, on Tuesday, October 4, 2016.  *Gov. Nathan Deal declares state of emergency ahead of Hurricane Matthew*, WTOC, Oct. 4, 2016, *available at* http://www.wtoc.com/story/33315568/gov-nathan-deal-declares-state-of-emergency-ahead-of-hurricane-matthew.  The Chatham County Commission called for a voluntary evacuation of roughly eleven percent of the county's population on Wednesday, October 5, 2016.  *The Latest: Georgia coast placed under hurricane watch*, WRDW, Oct. 5, 2016, *available at* http://www.wrdw.com/content/news/Gov-Deal-declares-state-of-emergency-ahead-of-Hurricane-Matthew-395861441.html.  The City of Tybee Island, which is located in Chatham County, also

issued a mandatory evacuation order that began at 3 pm on Wednesday, October 5, 2016 and the United States Postal Service suspended operations in Chatham County.      Governor Deal issued a mandatory evacuation order for six counties, including Chatham County, on Thursday, October 6, 2016.  Press release, Deal orders mandatory evacuation east of Interstate 95 for six coastal counties, Oct. 6, 2016, *available at* https://gov.georgia.gov/press-releases/2016-10-06/deal-orders-mandatory-evacuation-east-interstate-95-six-coastal-counties.

Hurricane Matthew hit Chatham County as a Category 2 hurricane on Friday, October 7. Nicole Carr, Ross Cavitt, & Richard Elliott, *Deaths, floods as Hurricane Matthew hits South Carolina*, WSB-TV, Oct. 9, 2016, *available at* http://www.wsbtv.com/news/local/atlanta/south-georgia-getting-pounded-by-hurricane-matthew/454816981; Governor Nathan Deal press release, GEMHSA: Georgia mobilizes recovery plan in Matthew's wake, *available at* https://gov.georgia.gov/press-releases/2016-10-08/gemhsa-georgia-mobilizes-recovery-plan-matthew%E2%80%99s-wake-1.  The hurricane caused massive destruction in Chatham County, which experienced high winds, heavy rain and flooding.  In Savannah, many trees were down and, and street lights and buildings were damaged.  The hurricane devastated the barrier islands, particularly Tybee Island.  Approximately 116,000 Chatham County residents lost power.  Some residents were evacuated by bus to Augusta.  Some began to return on Monday, October 10, and were taken to a local shelter if they were unable to safely go home.  *The Latest: Savannah's signature tree canopy gets bushwacked by Matthew*, WRDW, Oct. 11, 2016, *available at* http://www.wrdw.com/content/news/The-Latest-Hurricane-closes-parts-of-I-95-on-Georgia-coast-396395301.html.  Governor Deal lifted the mandatory evacuation order for the mainland portion of Chatham County at 5 pm on Sunday, October 9.  Scott Trubey & Dan Chapman, *Gov. Deal lifts hurricane evacuation orders; islands still closed*, THE ATLANTA JOURNAL

6

CONSTITUTION, Oct. 9, 2016, *available at* http://www.ajc.com/news/local/gov-deal-lifts-hurricane-evacuation-orders-islands-still-closed/kJZwRm9Kj1UwYxOtH200CN/.

Chatham County government offices, including the Chatham County Board of Elections, were closed beginning Thursday, October 6, through Tuesday, October 11. *See* Exhibit A, Email from Ryan Germany to Kristen Clarke. The Chatham County Board of Elections office reopened on Wednesday, October 12. Most post offices in Chatham County were closed until Tuesday, October 11. Columbus Day, which was Monday, October 10, was not observed by the Chatham County government this year. 2016 Holiday Schedule, Chatham County, Georgia, *available at* http://www.chathamcounty.org/Home/Holiday-Schedule. The Chatham County Board of Elections office would therefore have been open on October 10 if it were not for Hurricane Matthew.

Although applicants who already have a Georgia driver's license or state ID card may register to vote online, this technology was not readily available to many residents of Chatham County, most of whom had evacuated the county. Moreover, electricity and cable were out in much of the county. Online registration was also not available to applicants who lack a Georgia driver's license or state ID card, including persons who have recently moved to Georgia, senior citizens, students and others. Additionally, the Georgia online voter registration database experienced glitches and problems on Monday, October 10, and Tuesday, October 11. These problems prevented some applicants from successfully completing online voter registration applications. *As online voter registration closes, mixed success in Georgia*, 11ALIVE, Oct. 11, 2016, *available at* http://www.11alive.com/news/local/as-online-voter-registration-closes-mixed-success-in-georgia/333992259.

Hurricane Matthew and its aftermath effectively prevented Chatham County residents from registering to vote up to 30 days before the election, during what is typically the busiest period of voter registration every four years.  Governor Deal's evacuation order and the closure of Chatham County government offices until today, while necessary for public safety, prevented county residents from registering to vote in person.  And, due to widespread and ongoing power outages, many prospective voters were unable to access, download, and print registration forms to be mailed, or to register to vote online.  For all practical purposes, voter registration opportunities were unavailable to many residents of Chatham County after Wednesday, October 5.

A significant number of prospective minority voters were affected by the loss of voter registration opportunities due to Hurricane Matthew.  According to the 2011-2014 American Community Survey, approximately 78,713 (38.7%) of Chatham County's 203,629 citizens of voting age are Black, while 6,040 (3.0%) are Latino.

The planned voter registration activities by the Plaintiffs in Chatham County had to be cancelled or severely curtailed because of Hurricane Matthew and the Governor's evacuation order.  For example, Plaintiff GCPA has traditionally engaged in voter registration efforts in Georgia, including in Chatham County, with the heaviest voter registration activity typically occurring within the days leading up to the close of voter registration in presidential election cycles.  Exhibit E, Butler declaration ¶ 7.  The GCPA's registration activities generally involve conducting door to door canvassing, contacting potential registrants in high traffic areas, and registration events at high schools, community events and at churches.  *Id.* ¶ 8.  GCPA members had planned to make a final effort to register voters in Chatham County between Friday, October 7, 2016 and Tuesday, October 11, 2016 since these were the final five days before the close of

voter registration and included a long holiday weekend when the GCPA hoped to be able to reach a significant number of potential applicants. *Id*. ¶ 9. However, GCPA was unable to proceed with its planned voter registration activities in Chatham County between October 7, 2016 and October 11, 2016 due to Hurricane Matthew and its aftermath. In particular, due to the mandatory evacuation order in Chatham County and surrounding counties issued by Governor Deal on October 6, GCPA members were unable to conduct any voter registration activity in Chatham County between October 7 and October 9, 2016. *Id*. ¶ 10

Although residents were allowed to begin returning to homes in the County on Sunday evening (October 9), power was still out in many parts of the County, a number of roads were impassible, electrical wires were down and presented a safety hazard and local officials asked that people remain home and off the roads. These conditions would not have allowed GCPA canvassers to have safely conducted door to door registration canvassing in Chatham County even after the evacuation order was lifted. *Id*. ¶ 12. As a result, GCPA determined that it could not move forward with its plans to conduct door to door canvassing in Chatham County on October 10 or 11, 2016. *Id*. ¶ 13. Since the Chatham County Board of Elections office was also closed between October 7 and 11, 2016, this would have made it impossible for GCPA canvassers to hand deliver applications to the Board, even if canvassers were able to collect applications during this time frame. *Id*. ¶ 14.

Hurricane Matthew and its impact on Chatham County also forced the Georgia NAACP to cease its voter registration activities between October 7 and October 10, 2016. During the summer and fall of 2016, the Georgia NAACP has been carrying out its "Voter Empowerment Campaign." The goal of the campaign is to increase voter registration, provide voter education and encourage civic participation across the state and is aimed particularly at students, seniors,

returning citizens, urban and rural communities, including communities in Chatham County.
Exhibit F, Johnson declaration, ¶ 7.

The Georgia NAACP maintains a branch office in the City of Savannah, which has historically mounted significant voter registration efforts in Chatham County, particularly during presidential election cycles.  *Id*. ¶ 9.  As a result of Governor Deal's evacuation order in advance of Hurricane Matthew on October 6, 2016, as well as the aftermath of the hurricane, the Savannah Branch office of the Georgia NAACP was closed between October 7 and October 10, 2016.  *Id*. ¶ 10.  As a result, the Savannah branch office was unable to conduct any voter registration activity between October 7 and October 10, 2016, which it otherwise would have done.  *Id*.

The Georgia NAACP had previously planned to participate in a voter registration event at the Sam's Club at 1975 East Montgomery Cross Road in Savannah, Georgia between 11 a.m. and 4:00 p.m. on Saturday, October 8, 2016.  However, as a result of the evacuation order and hurricane damage, the Georgia NAACP was forced to cancel this event.  *Id*. ¶ 11.  The Savannah branch office had also planned to participate in voter registration activities following church services in Chatham County on Sunday, October 9, 2016.  However, those activities were also cancelled as a result of the aftermath of Hurricane Matthew and the extensive power outages, flooding and other problems that resulted from the torrential wind and rain that impacted Chatham County.  *Id*. ¶ 12.  Finally, due to safety concerns, the Georgia NAACP cancelled any door to door voter registration canvassing in Chatham County between October 7, 2016 and October 11, 2016.  Since the Chatham County Board of Elections was closed between October 7 and 11, 2016, which would have made it impossible for canvassers to personally deliver voter registration applications to the Board of Elections during this time frame anyway.  *Id*. ¶ 13.  In

short, the organization was unable to conduct what would have normally been an intensive final push to register new voters in the County ahead of the close of voter registration for the upcoming November 8, 2016 general election.  *Id*. ¶ 14.

Plaintiff NGP was also forced to cancel its plan to help applicants through is registration drives to cure problems that were preventing them from being placed onto the active voter list because of Hurricane Matthew and its aftermath.  Exhibit G, Ufot declaration,.

In an attempt to resolve this matter without resorting to litigation, the Lawyers' Committee for Civil Rights Under Law sent a letter to Georgia Attorney General Sam Olens and General Counsel for the Georgia Secretary of State C. Ryan Germany on Tuesday, October 11. Exhibit B, Letter from Kristen Clarke to Attorney General Olens and Mr. Germany.  The letter noted the closures in Chatham County and asked that the voter registration deadline be extended in the county to permit county residents an equal opportunity to participate in the electoral process.  Mr. Germany responded on Wednesday, October 12.  His email stated that the Georgia Secretary of State declined to ask the Governor to extend the voter registration deadline in Chatham County or anywhere else in the state.  In particular, he claimed that extending the deadline was "not appropriate or prudent given that opportunities to register remained available and that counties, including counties affected by the storm, need to continue to prepare for early voting beginning on Monday."  Ex. A.

Governor Deal has refused to extend the voter registration deadline despite acknowledging the severe impact of the storm.  *See*, *e.g.*, Governor Nathan Deal press release, Hurricane Matthew recovery update, *available at* https://gov.georgia.gov/press-releases/2016-10-08/hurricane-matthew-recovery-update-0.  This refusal has had the impact of disenfranchising a significant number of eligible prospective voters, a large percentage of whom are Black.

People who were unable to register by yesterday's deadline cannot vote in the November 2016 election.

Georgia stands alone in its refusal to protect its voters.  For example, South Carolina voluntarily extended its voter registration deadline, while Florida has been ordered to do so as a result of litigation.  Order Granting Preliminary Injunction, ECF No. 29, *Fla. Dem. Party v. Scott*, No. 4:16-cv-626-MW/CAS (N.D. Fla. Oct. 12, 2016); Order Granting Temporary Restraining Order, ECF No. 15, *Fla. Dem. Party v. Scott*, No. 4:16-cv-626-MW/CAS (N.D. Fla. Oct. 10, 2016); *S.C. extends voter registration deadline in anticipation of Hurricane Matthew*, THE HERALD, Oct. 6, 2016, *available at* http://www.heraldonline.com/news/local/article106494827.html.

## IV.   ARGUMENT

### A.   The Standard for Issuing a Preliminary Injunction

The decision to issue a preliminary injunction lies within the sound discretion of the Court. *United States v. Georgia*, 892 F. Supp. 2d 1367, 1372 (N.D. Ga. 2012).  The Court may grant a preliminary injunction upon a showing by the moving party that:  (1) "it has a substantial likelihood of success on the merits;" (2) "irreparable injury will be suffered unless the injunction issues;" (3) "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party;" and (4) "if issued, the injunction would not be adverse to the public interest."  *Jenard v. Comm'r, Ga. Dept. of Corr.*, 457 Fed. App'x 837, 838 (11th Cir. 2012).

### B.   Plaintiffs are Likely to Succeed on the Merits of their Claims

#### 1.   Defendants' Refusal to Extend the Voter Registration Deadline Imposes A Severe Burden on the Right to Vote without Advancing any State Interest

The right to vote "is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (citation omitted); *see also Yick Wo v.*

*Hopkins*, 118 U.S. 356, 370 (1886).  "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. . .  Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right."  *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964).[1] Accordingly, the courts have developed a balancing test to prevent the unjustified burdening of the right to vote—a test that the Defendants' refusal to extend the voter registration deadline fails on both ends of the scale.

*The Anderson-Burdick Test*

A State may not place any burdens on the right to vote that are not adequately justified by the State's asserted interests.  *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).  When considering challenges to state election laws that burden the fundamental right to vote, courts must "weigh 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'"  *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789); *see also Obama for Am. v. Husted*, 697 F.3d 423, 433 (6th Cir. 2012).

The *Anderson-Burdick* framework is a "flexible" sliding scale, in which the "rigorousness of [the court's] inquiry" increases with the severity of the burden.  *Burdick*, 504 U.S. at 434. When a state imposes a severe burden, strict scrutiny applies and any burdensome action must be narrowly tailored to advance a compelling state interest.  *See id.*

---

[1]   The right to vote includes the right to register.  *See United States v. McLeod*, 385 F.2d 734, 740 (5th Cir. 1967).

The Defendants' refusal to extend the voter registration deadline, despite the devastating impacts of Hurricane Matthew on the state in general, and specifically in Chatham County, will completely disenfranchise hundreds, if not thousands, of eligible residents from being able to vote in the November 8, 2016 general election.  Tens of thousands of Chatham County residents, through no fault of their own, were forced to evacuate as a result of the Governor's mandatory evacuation order.  Government offices, including the Chatham County Board of Elections and U.S. post offices in Chatham County were also closed during the critical final weekend when voters across the state outside of the hurricane zone were submitting voter registration applications. Even after Chatham County residents were allowed to return to their homes on the evening of October 9, 2016, the County Board of Elections office remained closed for the duration of the voter registration period through midnight on October 11, 2016. Thus, even if Chatham County residents wanted to go to the Board of Elections to submit new voter registration applications, they could not do so. Given the number of voters affected and the number of days lost in which they otherwise could have registered, the decision not to extend registration has disenfranchised innumerable Chatham County citizens. Because the burden imposed was severe, Defendants' actions must be narrowly tailored to advance a compelling state interest.  *See Burdick*, 504 U.S. at 434.  But even if the burdens imposed on eligible applicants were considered less than severe, it would not relieve the State of the obligation to offer a justification that outweighed those burdens.  *See id.* (courts must evaluate "the extent to which [state] interests make it necessary to burden the plaintiffs' rights") (citation omitted).  The refusal to extend the deadline in the wake of Hurricane Matthew is so arbitrary and so unnecessary to advance any state interest that it would not pass the *Anderson-Burdick* test, even under the most lenient scrutiny.

The Georgia Secretary of State's stated justification for his decision not to ask the Governor to extend the registration deadline appears to be based upon the unprecedented nature of such a request and because of a concern that doing so would take the County election officials' attention away from preparing for the upcoming general election.

There is no legitimate state interest that justifies this arbitrary treatment of eligible Georgia residents, based merely on the fact that no extension has been granted previously and because election officials need to prepare for the election itself.  *See Bullock v. Carter*, 405 U.S. 134, 141 (1972) (in regulating elections, state's "power must be exercised in a manner consistent with the Equal Protection Clause.").

### 2.   Defendants' Conduct Violates the NVRA

Plaintiffs are also likely to succeed on their claim that Defendants' decision not to extend the voter registration deadline violates the NVRA.  Specifically, Section 8 of the NVRA requires states to process any voter registration form received or postmarked no later than the lesser of 30 days before an election or a period set by state law.  52 U.S.C. § 20507(a)(1).  Each State is required to:

> "ensure that any eligible applicant is registered to vote in an election – (A) in the case of registration with a motor vehicle . . . if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election; (B) in the case of registration by mail . . . if the valid voter registration form of the applicant is postmarked not later than the lesser of 30 days, or the period provided by State law, before the date of the election; and (C) in the case of registration at a voter registration agency, if the valid voter registration form of the applicant is accepted at the voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election; and (D) in any other case, if the valid voter registration form of the applicant is received by the appropriate State election official not later than the lesser of 30 days, or the period provided by State law, before the date of the election.
> Id.

Refusing to extend the voter registration deadline in the face of a natural disaster that effectively stripped aspiring voters of their opportunity to register to vote during the last six days of the voter registration period violates this provision.  Hurricane Matthew effectively foreclosed the ability to register to vote for six days, including four business days when the Chatham County Board of Elections office would otherwise have been open.  Notably, the board of elections office was going to be open on Columbus Day, as that holiday was not observed by the Chatham County government this year.  2016 Holiday Schedule, Chatham County, Georgia, available at http://www.chathamcounty.org/Home/Holiday-Schedule.

The assertion made by counsel for Secretary Kemp that "opportunities to register remained available" during Hurricane Matthew ignores the reality faced by residents of Chatham County, where power was out and the buildings and property were damaged.  Moreover, it glosses over another reality – that large numbers of Georgia citizens, including those in Chatham County, register in the exact period taken away by the storm.  Historical voter registration data indicates that a significant number of Georgians rely on their legally protected right to register up to 30 days before a presidential election.  Following Governor Deal's logic, a state could restrict voter registration opportunities as long as some theoretical mechanism for registration remained available on the 30th day before an election, which is contrary to the rule that a statute must be interpreted congruently with its purpose.  See, *United States v. Louisiana*, Case No. 3:11-cv-00470-JWD-RLB, 2016 WL 4055648 (M.D. La. Jul. 26, 2016) at *7 ("Congress passed the NVRA so as 'to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office'").

The NVRA protects the right of eligible voters to register, and have their registrations be counted—in the entire period for which registration activity normally occurs—up to 30 days before

an election.  However, eligible prospective voters who planned to register in Chatham County during the past week, whether in person or by mail, were unable to do so due to circumstances far beyond their control.  For several days, it was virtually impossible for residents of the Matthew-battered coast to register to vote during the statutorily-entitled timeframe.  The State of Georgia cannot disenfranchise voters who relied on the right, protected by federal law, to register up to 30 days before the presidential election simply because a sudden and unexpected natural disaster made doing so impossible.  Extending the deadline and permitting these voters to register as planned is the only way for Georgia to comply with the NVRA.

Moreover, refusing to extend the deadline is inconsistent with the very purpose of the NVRA, which is, unequivocally, to expand the franchise—to "increase the number of eligible citizens who register to vote in elections" and "to enhance[] the participation of eligible citizens as voters." 52 U.S.C. § 20501.  The NVRA was enacted "to ensure that no American is denied the ability to participate in Federal elections because of real or artificial barriers … [and] to make voter registration an inclusive, rather than an exclusive opportunity in the United States."  139 Cong. Rec. H495-04 (1993) (statement of Rep. Martin Frost).

The NVRA was particularly concerned with addressing and mitigating barriers to registration.  Its Senate sponsors acknowledged that "[w]hile most contributing factors may not be affected by legislation, one—difficulties encountered by some who desire to register to vote—is susceptible to correction by legislation." S. Rep. 103-6, at 2 (1993).  Similarly, House members recognized that "[t]he unfinished business of registration reform is to reduce these obstacles to voting to the absolute minimum while maintaining the integrity of the electoral process."  H.R. Rep. 103-9, at 3 (1993).  In contrast, denying the request to extend the registration deadline thwarts Congress's purpose in passing the NVRA: to "increase the number of eligible citizens who register

to vote" and "enhance[] the participation of eligible citizens as voters." 52 U.S.C. § 20501. Refusing to extend the deadline constitutes exactly the type of artificial barrier that the NVRA was designed to protect against.

Plaintiff is likely to succeed on its NVRA claim—in addition to its other claims—and an injunction should therefore be issued.

## C.   An Injunction is Necessary to Avoid Irreparable Harm

The violation of a citizen's right to vote is the quintessential injury justifying an injunction. *See, e.g.*, *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000) ("[B]y finding an abridgement to the voters' constitutional right to vote, irreparable harm is presumed and no further showing of injury need be made."); *Common Cause/Ga.*, 406 F. Supp. 2d at 1376 ("[T]he right to vote is a fundamental right and is preservative of all other rights.  Denying an individual the right to vote works a serious, irreparable injury upon that individual.").

All of these unfairly disenfranchised prospective applicants will suffer an injury that can never be undone.  Thus, Chatham County prospective voter registration applicants have, and will, suffer irreparable harm unless the Court grants the requested relief.

## D.  The Balance of Hardships Weigh in Favor of an Injunction

The balance of hardships clearly weighs in favor of Plaintiffs and in favor of granting the requested relief herein.  The requested relief will not subject Chatham County to any unreasonable hardship under the circumstances if they are required to accept voter registration applications through October 19, 2016.  While there may be some administrative inconvenience in the overlap between early voting and the submission of voter registration applications during this period, such inconvenience would not be a sufficient burden to justify disenfranchising eligible Georgians who were prevented from registering to vote because of a natural disaster and

18

through no fault of their own.  As Judge Walker explained, in rejecting this precise argument in

*Fla. Dem. Party*, *supra*:

> This case pits the fundamental right to vote against administrative convenience.
> Of course, the State of Florida has the ability to set its own deadlines and has an
> interest in maintaining those deadlines.  But it would be nonsensical to prioritize
> those deadlines over the right to vote, especially given the circumstances here.
> Other states ravished by Hurricane Matthew extended their registration deadline
> to protect voters. . . . It is incomprehensible that Florida could not follow suit.  *Id.*
> ECF 15, p. 14. [2]

### E.  An Injunction is in the Public Interest

The public interest will be best served by allowing every eligible resident of Georgia to

register and cast a vote, thereby preserving this fundamental right and fostering trust in the integrity

of the elections.  See *Washington Ass'n of Churches*, 492 F. Supp. 2d at 1271; *Wesley*, 408 F.3d

at 1355; *Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs,* 118 F. Supp. 3d 1338,

1348–49 (N.D. Ga. 2015); *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 244 (6th Cir.

2011).  Again, Judge Walker put it well:

> These voters have already had their lives (and, quite possibly, their homes) turned
> upside down by Hurricane Matthew.  They deserve a break, especially one that is
> mandated by the United States Constitution.  Ensuring that they can exercise their
> constitutional right ot vote thus promotes the public interest.
> *Fla. Dem. Party*, *supra*, ECF 15, p. 14.

In sum, the present case is another in the long line where a federal court has stood as the

last and best bulwark against deprivation of fundamental rights enjoyed by citizens under the

Constitution and laws of the United States.  Unless the requested relief is granted, thousands of

prospective voter registration applicants in Chatham County are likely to be disenfranchised solely

as a result of a natural disaster that was totally outside of their control to prevent. Such a result

---

[2]  South Carolina voluntarily extended its registration deadline in the wake of the storm.

would be not only unfair, but a violation of their fundamental right to vote and a violation of the National Voter Registration Act.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting their motion for a preliminary injunction and such further relief as it deems just and proper.


Dated: October 12, 2016              Respectfully submitted,

                             By:     */s/ William V. Custer*
                                     William V. Custer
                                     Georgia Bar No. 202910
                                     Jennifer B. Dempsey
                                     Georgia Bar No. 217536
                                     Bryan Cave LLP
                                     One Atlantic Center
                                     Fourteenth Floor
                                     1201 West Peachtree Street, NW
                                     Atlanta, Georgia 30309-3488
                                     Phone:   (404) 572-6600
                                     Fax:      (404) 572-6999
                                     bill.custer@bryancave.com
                                     jennifer.dempsey@bryancave.com

                                     Ezra D. Rosenberg (*pro hac vice – to be filed*)
                                     Julie Houk (*pro hac vice – to be filed*)
                                     John Powers (*pro hac vice – to be filed*)
                                     Lawyers' Committee for Civil Rights Under Law
                                     1401 New York Avenue NW, Suite 400
                                     Washington, D.C. 20005
                                     Telephone:     (202) 662-8600
                                     Facsimile:     (202) 783-0857
                                     erosenberg@lawyerscommittee.org
                                     jhouk@lawyerscommittee.org
                                     jpowers@lawyerscommittee.org

                                     *Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

GEORGIA COALITION FOR THE PEOPLES'
AGENDA, INC., as an organization;
GEORGIA STATE CONFERENCE OF THE
NAACP, as an organization; and THIRD
SECTOR DEVELOPMENT, INC., as an
organization;

           Plaintiffs,

v.

JOHN NATHAN DEAL, in his official capacity
as Governor of Georgia, and BRIAN P. KEMP,
in his official capacity as Secretary of State for
the State of Georgia,

           Defendants.

Civil Action Case No._____

**CERTIFICATE OF SERVICE**

    I hereby certify that I caused the foregoing **PLAINTIFFS' MEMORANDUM OF
LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A
PRELIMINARY INJUNCTION** to be electronically filed with the Clerk of Court using the
CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys
of record.

This 12th day of October, 2016.

By:    */s/ William V. Custer*
            William V. Custer
            Georgia Bar No. 202910
            Bryan Cave LLP
            One Atlantic Center
            Fourteenth Floor
            1201 West Peachtree Street, NW
            Atlanta, Georgia 30309-3488
            Phone:  (404) 572-6600
            Fax:     (404) 572-6999
            bill.custer@bryancave.com